SISTER MARIE GOLLA, Plaintiff-Appellant, v. GENERAL MOTORS CORPORATION, Defendant-Appellee.

Fourth District   No. 4—93—0539

Argued February 23, 1994.—Opinion filed April 29, 1994.

Cheryl A. Handy (argued) and D. Cameron Dobbins, both of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

R. Michael Henderson and Alice M. Stevens (argued), both of Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Sister Marie Golla appeals from an order of the circuit court of Champaign County granting summary judgment to defendant General Motors Corporation in this products liability action. The only issue raised by plaintiff is whether the trial court improperly granted summary judgment because (a) the discovery rule was misapplied, or (b) a genuine issue of material fact remained to be determined. We affirm.

On August 8, 1989, plaintiff filed a complaint alleging that on June 21, 1984, she purchased a 1984 Buick Skylark four-door sedan which was not reasonably safe because the seat adjustment and locking mechanism on the driver's seat was subject to failure during a collision. The complaint further alleged that on September 3, 1985, plaintiff was operating this Buick when it was involved in a collision with another automobile. At that time, the plaintiff, who was wearing the three-point passenger restraint with which the vehicle was equipped, was injured when the driver's seat slid forward. As a result, plaintiff allegedly suffered from reflex sympathetic dystrophy (RSD).

Defendant asserted an affirmative defense based on the statute of limitations contained in section 13—202 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 13—202) and filed a motion for summary judgment. Defendant also filed a request to admit facts to which plaintiff never replied (134 Ill. 2d R. 216). The request to admit facts asked plaintiff to admit that (1) she was involved in an automobile accident on September 3, 1985; (2) directly following the accident on that date, she was seen by Dr. Sol Barnett; (3) she was also seen by Barnett on September 4, 1985, at which time she complained of discomfort and swelling in her left wrist; and (4) on April 8, 1986, she was seen by Barnett and complained of discomfort in her left shoulder and arm.

In opposition, plaintiff asserted that the discovery rule in section

13—213(d) of the Code applied. (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(d).) According to plaintiff, because the RSD did not manifest itself until November 1987 and was not diagnosed until March 1988, the cause of action was not time-barred. Plaintiff's affidavit stated she first experienced symptoms on November 1, 1987, and saw Barnett on that date. Barnett referred her to Drs. Wayne A. Rubinstein and Barry G.W. Arnason, who diagnosed her condition as RSD on March 23, 1988.

After concluding that the discovery rule pertained and that plaintiff's response to the motion for summary judgment sufficiently raised a genuine issue of material fact, the trial court denied the defendant's motion for summary judgment. However, defendant filed a motion to reconsider the denial of the motion for summary judgment. In addition to the request to admit facts previously referred to, several additional documents were attached as exhibits.

In a letter to Mr. Sun Nurmohammed, dated June 4, 1986, plaintiff described the accident as follows:

"On September 3, 1985, our car, a 1984 Buick Skylark[,] was involved in an accident in which in [sic] sustained considerable damage. So violent was the impact of the crash that the front seat broke loose from the floor causing considerable physical hurt from the seat belt which forced me to remain in place."

The medical records of Barnett, dated September 3 and 4, 1985, as well as Barnett's discovery deposition, indicated that it was Barnett's impression that on September 3, 1985, plaintiff suffered a contusion of the chest as a result of the accident and on September 4, 1985, she suffered a sprain or contusion of the left wrist. Had he thought there was something more serious, he would have ordered X rays. Plaintiff did not appear to be in acute distress. His examination revealed tenderness in the chest wall and tenderness and swelling of the left wrist. He felt there could have been a stretching phenomenon of the wrist. Plaintiff had full range of motion.

Subsequently, he saw her for an injury to the left fourth finger on October 15, 1985, and discomfort in the lower rib cage—possibly chest wall pain—on April 2, 1986. The reasons for the April 8, 1986, February 17, 1987, and June 18, 1987, visits were not explained in his deposition. She was seen for a migraine headache and contusion of the right thumb on September 3, 1986, falling to her knees on January 6, 1987, pain in the right elbow and discomfort in both hips on January 13, 1987, and cysts on April 21 and May 14, 1987. On June 24, 1987, she was seen because she had passed out. Barnett suspected a functional syncope. He did not suspect a brain tumor "or anything serious." After a few more unexplained visits, plaintiff was

sent to Dr.. J. Timothy Sehy on December 29, 1987. In his notes, Sehy said plaintiff's chest discomfort had been "long standing and unchanged." Barnett testified that prior to December 29, 1987, plaintiff had been suffering from chest discomfort.

The doctors treating her started to suspect she had Raynaud's phenomenon because her left hand became cold and bluish. Barnett conceded he knew nothing about RSD. Plaintiff did not respond to treatment for Raynaud's phenomenon, and she was finally sent to a neurologist, who diagnosed RSD.

A review of the record does present a question of fact as to whether plaintiff knew or reasonably should have known of the extent of her injuries, specifically the time of diagnosis of RSD. Drs. Rubenstein, Robert W. Quigg, Terri Dallas and Frederick Brown variously stated RSD could develop at different time periods after trauma, from immediate, within a few days, weeks, months, and up to two years. However, under the facts of this case, the time of diagnosis of RSD did not extend the limitations period.

Plaintiff filed a reply to the motion for reconsideration and a supporting memorandum. Plaintiff pointed out that her June 4, 1986, letter to Nurmohammed was a complaint about the repairs to the vehicle. Plaintiff also referred to exhibits to the discovery depositions of Rubinstein and Quigg. The trial court considered the doctors' depositions as well. On reconsideration, summary judgment was granted in favor of defendant.

Section 13—202 of the Code provides for a two-year statute of limitations after the accrual of the cause of action for personal injury. (Ill. Rev. Stat. 1991, ch. 110, par. 13—202.) In a products liability case, if the user of a product sustained an injury within 12 years from the date of first sale or 10 years from the date of alteration of the product or the sale to the initial user (Ill. Rev. Stat. 1991, ch. 110, pars. 13—213(b), (c)), then the user may commence an action to recover damages within two years after the date on which she knew, or through the use of reasonable diligence should have known, of the existence of the personal injury. Ill. Rev. Stat. 1991, ch. 110, par. 13—213(d).

As a remedy, summary judgment is drastic and is appropriate only where no genuine issue of material fact exists and the moving party's right to it is clear and free from doubt. In evaluating the propriety of granting summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. Although inferences may be drawn from undisputed facts, where the material facts are disputed or where reasonable persons might draw

different inferences from the undisputed facts, a triable issue precluding summary judgment exists. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792; *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 357-59, 543 N.E.2d 1304, 1307-08.) On review, this court considers *de novo* the propriety of granting the motion for summary judgment, and an abuse of discretion standard is not employed. *Larson v. Decatur Memorial Hospital* (1992), 236 Ill. App. 3d 796, 801, 602 N.E.2d 864, 868.

■ The application of the discovery rule to determine when a party knows or reasonably should have known the injury occurred and it was wrongfully caused such that the statute of limitations begins to run is a question of fact. However, if the facts are undisputed and only one conclusion may be drawn from them, summary judgment will be an appropriate disposition. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69.) It was pointed out in *Nolan* that it was unnecessary for the complaining party to know of a particular defendant's negligent conduct in order for the statute of limitations to begin running. Instead, plaintiff should be on notice sufficient to warrant investigating into the cause of the wrongfully inflicted injury. See also *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874; *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 895-96, 588 N.E.2d 1193, 1202.

■ There are two elements to the discovery rule: (1) plaintiff must know or reasonably should have known of the injury, and (2) plaintiff must know or reasonably should have known that the injury was wrongfully caused. These are two separate elements which are not concomitant (*Dockery v. Ortiz* (1989), 185 Ill. App. 3d 296, 305, 541 N.E.2d 226, 231), but they both must be present to begin the running of the limitations period. "Wrongfully caused" is a general term which does not connote that plaintiff knew of specific negligent conduct or the existence of a cause of action. (*Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231, 238, 482 N.E.2d 187, 192.) "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81.

In *Betts*, this court considered the discovery rule in an asbestos exposure case and concluded:

> "As related in *Nolan*, the law is that a cause of action arises when a person knows or should know, through reasonable diligence, of the injury *and its wrongful causation*. In this case, Smith

was alerted to the fact of injury and to the possibility of its wrongful causation, although the doctor's diagnosis was not absolutely certain in the absence of a biopsy, but Smith would not drive to Milwaukee for further tests by a specialist. Smith was certainly put on notice and, had he pursued the recommended treatment, would have discovered the fact his lung injury was wrongfully caused more than two years before he filed suit in this case." (Emphasis in original.) *Betts*, 225 Ill. App. 3d at 897, 588 N.E.2d at 1203.

Of course, the asbestos exposure involved in *Betts* was not a single traumatic incident, such as an automobile accident. In this case, the question is, when does the statute of limitations begin to run if (1) a person knows she was hurt and (2) knows the injury was wrongfully caused by the failure of the defendant's product, but (3) does not know the full extent of her injuries? As the discussion in *Betts* concerning damages for medical monitoring suggests (*Betts*, 225 Ill. App. 3d at 920-21, 588 N.E.2d at 1218), it is not unheard of that further complications from injuries may occur. However, that does not relieve the plaintiff from suing within the statute of limitations. Instead, if plaintiff proves her case, plaintiff would be allowed to recover for future pain and suffering and medical expenses which are reasonably certain to be incurred. See Illinois Pattern Jury Instructions, Civil, Nos. 30.05, 30.06 (3d ed. 1993).

■ Requiring the prosecution of a right of action within a reasonable time so as to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims is the primary purpose of a limitations period. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132, 334 N.E.2d 160, 162.) In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, the Supreme Court of Illinois recognized the discovery rule allowing the courts to balance the increase in difficulty of proof arising from the passage of time with the hardship to a plaintiff who neither knew nor should have known of the right to sue. (*Rozny*, 43 Ill. 2d at 70, 250 N.E.2d at 664.) Discovery rule statutes are codifications of the rule announced in *Rozny*. *Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694, 695, 392 N.E.2d 440, 441.

Of course, the discovery rule, as it is applied to different fact situations, has different ramifications. Most of the cases cited by the parties are medical malpractice cases. However, as explained in *Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964, 967, 478 N.E.2d 485, 488, the courts are reluctant to find in medical malpractice cases that there was a "traumatic event" which started the

running of the statute of limitations, because plaintiffs cannot readily distinguish between the injury being wrongfully caused and being another manifestation of the preexisting condition for which the plaintiff was being treated. Except for a general discussion of legal principles, many of the cases cited by the parties are so factually distinguishable as to be of little value to the analysis of this issue.

■ When a personal injury results from a sudden, traumatic event, the injured person is deemed to have known immediately of the right to sue, the limitations period begins to run at the time of the injury, and the discovery rule does not apply. (*Dockery*, 185 Ill. App. 3d at 306, 541 N.E.2d at 231.) In *Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137, 138-43, 438 N.E.2d 1250, 1251-54, plaintiff was injured in a forklift accident on October 12, 1977, and sued the manufacturer of the forklift on May 2, 1980. The court found that the injury was sustained as a result of a sudden, traumatic event. The limitations period began to run at the time of the injury because plaintiff knew or should have known of the right to sue at that time.

■ In this case, the evidence is that there must be some physical trauma to cause the RSD, and the trauma to which plaintiff points is the accident of 1985 in which the seat restraints on the vehicle manufactured by defendant did not work properly. Plaintiff argues that the discovery rule should apply because the onset of RSD occurred over time and, although she was injured at the time of the accident, she did not know until later of the extent of her injury. In *Franke v. Geyer* (1991), 209 Ill. App. 3d 1009, 1012, 568 N.E.2d 931, 933, the court stated:

> "The fact that plaintiff may not have discovered the full extent of her injuries (or that she had a cause of action) until some 13 to 14 years later is not the test. A plaintiff need not know all of the facts or circumstances in order for the statute of limitations to begin running."

Plaintiff particularly relies on *Cuerton*, which involved a March 31, 1983, suit for injuries suffered in a February 1980 surgery. However, plaintiff's attorney wrote a letter to defendant on June 6, 1980, stating plaintiff had an infection and fever following surgery and asking for a report regarding a defective product. Although the court stated the letter showed sufficient knowledge to begin the limitations period, this conclusion is *dicta* as the issue had been waived anyway. However, the court also noted that the physical injury of being rendered a quadriplegic on September 22, 1982, due to the failure of the second shunt inserted on May 15, 1980, was a separate and distinct injury from that attributed to the initial surgery of February

12, 1980. Plaintiff was not aware that he would become a quadriplegic until September 22, 1982, and could not until that date have discovered he had been injured and that the injury was wrongfully caused. This injury was not considered to be consequential damage from the prior injury "or alleged act of negligence occurring in 1980," and the part of the complaint relating to the quadriplegia was not deemed time-barred. (*Cuerton*, 136 Ill. App. 3d at 239-40, 482 N.E.2d at 193.) *Cuerton* involved two separate injuries from two separate causes, unlike the case at bar.

In many of the cases cited by the parties, the wrongful cause of the injury became obvious once the injury was discovered by the injured party. If the injury is immediately discoverable following a traumatic event, the limitations period begins to run. If the injury is not caused by a traumatic event, it may not be immediately discoverable. That, however, is a different question than is presented in this case.

Here, plaintiff knew she was involved in an automobile accident, knew she was injured, and knew that the seat restraints broke loose in the collision. Plaintiff contends, however, the RSD is a latent injury about which she did not immediately learn.

*Nolan* (85 Ill. 2d at 163-69, 421 N.E.2d at 865-67) makes it clear that the ruling therein applies to the limitations period for bringing strict products liability actions for injuries which develop over a long period of time, such as those incurred by workers exposed to asbestos for 32 years. However, plaintiff in this case was not exposed to anything for any length of time which would cause the RSD. The RSD allegedly resulted from a single traumatic event.

Plaintiff in this case was injured in an automobile accident on September 3, 1985. She knew then that the seat restraint did not hold. Although RSD may progress gradually, its onset is caused by a physical trauma. The only physical trauma alleged in this case is that incurred in the automobile accident. On the day of the accident and the next day, plaintiff was seen by her doctor. Plaintiff attributed the pain to other physical problems she had. Although plaintiff did not know of the extent of her injuries, she knew of the wrongful conduct and knew she was injured. The trial court correctly determined that the plaintiff was put on sufficient notice of the injury and its possible wrongful cause to require her to inquire about it.

Accordingly, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.