LARRY D. WALKER *et al.*, Plaintiffs-Appellees, v. DESIREE G. ROGERS, Director of the Department of the Lottery, *et al.*, Defendants-Appellants.

Fourth District    No. 4—94—0565

Argued March 21, 1995.—Opinion filed May 11, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General (argued), of counsel), for appellants.

Donald J. Casper, P.C. (argued), of Springfield, and Thomas B. Smith, of Shaver & Smith, P.A., of Wynne, Arkansas, for appellees.

Martha J. Burns, of Robins, Kaplan, Miller & Ciresi, of Chicago, for *amicus curiae.*

JUSTICE COOK delivered the opinion of the court:

Defendants, Desiree G. Rogers, Director of the Department of the Lottery, Department of the Lottery, and the Lottery Control Board, appeal the trial court's May 1994 order granting summary judgment for plaintiffs, Larry D. Walker and R & P Capital Resources, Inc. (R&P), approving an assignment of lottery winnings. On appeal, defendants argue (1) the trial court lacked subject-matter jurisdiction under the doctrine of sovereign immunity; and (2) section 13 of the Illinois Lottery Law (Law) (20 ILCS 1605/13 (West 1992)) prohibits the voluntary assignment of future payments of lottery prizes. We reverse.

In May 1986, Walker won $1,197,790 in the Illinois State Lottery. The prize was payable in 20 annual installments of $59,889. In June 1993, Walker entered into a contract with R&P, whereby Walker agreed to assign his right to a $30,000 portion of each of the 12 remaining payments to R&P in exchange for a lump-sum payment of $135,000. The contract was contingent upon the issuance of a final, nonappealable order by an Illinois court of competent jurisdiction ap-

proving the assignment and directing the Illinois State Lottery Board to recognize the assignment and make the assigned payments to R&P or its assignee. Defendants refused plaintiffs' request for consent to the assignment agreement. In August 1993, plaintiffs filed a complaint requesting the circuit court to enter an order approving the assignment pursuant to section 13 of the Law. In May 1994, the trial court granted summary judgment for plaintiffs, concluding that section 13 of the Law permitted the voluntary assignment of future payments of lottery winnings upon the entry of an appropriate judicial order.

Defendants first contend the trial court lacked subject-matter jurisdiction pursuant to the doctrine of sovereign immunity. The doctrine of sovereign immunity provides that the State shall be immune from any suit to which it has not consented. (*S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 400, 444 N.E.2d 131, 132, *overruled on other grounds sub nom. Rossetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 485 N.E.2d 332.) Sovereign immunity was abolished by the 1970 Illinois Constitution "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, § 4.) Under this authorization, the General Assembly enacted the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 1992)), section 1 of which provides:

> "Except as provided in the 'Illinois Public Labor Relations Act', enacted by the 83rd General Assembly, or except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." (745 ILCS 5/1 (West 1992).)

The Court of Claims has exclusive jurisdiction to hear and determine: "All claims against the [S]tate founded upon any law of the State of Illinois ***." 705 ILCS 505/8(a) (West 1992).

When sovereign immunity applies, the circuit court lacks jurisdiction to entertain the claim. (See *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 307-17, 549 N.E.2d 1240, 1246-51.) Sovereign immunity of the State has been extended to actions where a State agency or department is the named defendant. (See *Smith v. Jones* (1986), 113 Ill. 2d 126, 132-33, 497 N.E.2d 738, 740-41; *Noorman v. Department of Public Works & Buildings* (1937), 366 Ill. 216, 219, 8 N.E.2d 637, 638.) The determination of whether an action is a suit against the State, and thus one that must be brought in the Court of Claims, turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. (*Currie v. Lao* (1992), 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980; *Healy,* 133 Ill. 2d at 308, 549 N.E.2d at

1247.) An action is a claim against the State if a judgment for the plaintiff could operate to control the actions of the State or subject it to liability. (*Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980.) Because defendants never raised sovereign immunity in the circuit court, plaintiffs argue the issue is waived on appeal. This argument was recently rejected in *Currie*, where the State did not raise sovereign immunity until after the case was tried and a jury verdict returned. The court held there was no waiver because subject-matter jurisdiction can never be waived. *Currie*, 148 Ill. 2d at 157, 592 N.E.2d at 979.

■ After reviewing the issues raised and the relief requested, we conclude that plaintiffs' claim is not a suit against the State. The main issue is the propriety of plaintiffs' assignment agreement, and the State is only incidentally affected. Under the agreement, the State would not be subjected to liability and would still make the annual payments without losing the use of the money over 20 years. Therefore, plaintiffs' claim was not barred in the circuit court by sovereign immunity. *Cf. Doe v. Burgos* (1994), 265 Ill. App. 3d 789, 792, 638 N.E.2d 701, 703.

Turning to the propriety of the trial court's ruling, a court properly grants summary judgment when the pleadings, depositions, and affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) In construing a summary judgment motion, the trial court must view all evidence in a light most favorable to the nonmovant. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792.) We review the granting of summary judgment *de novo. Golla v. General Motors Corp.* (1994), 261 Ill. App. 3d 143, 147, 633 N.E.2d 193, 196.

The substantive issue before the court is whether section 13 of the Law prohibits the voluntary assignment of future lottery payments. Section 13 states:

> "*No prize, nor any portion of a prize, nor any right of any person to a prize awarded shall be assignable* [(clause one)]. Any prize, or portion thereof remaining unpaid at the death of a prize winner, may be paid to the estate of such deceased prize winner, or to the trustee under a revocable living trust established by the deceased prize winner as settlor, provided that a copy of such a trust has been filed with the Department along with a notarized letter of direction from the settlor and no written notice of revocation has been received by the Department prior to the settlor's death. Following such a settlor's death and prior to any payment to such a successor trustee, the Director shall obtain from the trustee and

each trust beneficiary a written agreement to indemnify and hold the Department harmless with respect to any claims that may be asserted against the Department arising from payment to or through the trust. *Notwithstanding any other provision of this Section, any person pursuant to an appropriate judicial order may be paid the prize to which a winner is entitled* [(clause two)], and all or part of any prize otherwise payable by State warrant under this Section shall be withheld upon certification to the State Comptroller from the Illinois Department of Public Aid as provided in Section 10—17.5 of The Illinois Public Aid Code. The Director [of the Lottery] shall be discharged of all further liability upon payment of a prize pursuant to this Section." (Emphasis added.) (20 ILCS 1605/13 (West 1992).)

The central focus of this case is the meaning of clauses one and two. Defendants argue that clause one is a *per se* prohibition on voluntary assignments, and clause two allows the voluntary assignment of lottery winnings only where a judicial order would serve as an appropriate remedy in a separate proceeding, *i.e.*, an equitable property distribution in a marital dissolution or an attachment by creditors. Plaintiffs interpret clause one as a general prohibition on voluntary assignments, and clause two as an exception to clause one, allowing voluntary assignment pursuant to an appropriate judicial order.

The primary rule of statutory construction, to which all other rules are subordinate, is that the court should ascertain and give effect to the intent of the legislature. (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714.) Legislative intent is best determined by the language of the statute, which should be given its plain and ordinary meaning. Where the statutory language is clear and unambiguous, it will be given effect without resorting to other construction aids. (*Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 531-32, 634 N.E.2d 1093, 1096.) If the statutory language is unclear and ambiguous, the court may look beyond the language employed and consider the purpose of the law and the evils the law was designed to remedy. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822.

This is an issue of first impression in Illinois. Thirty-six States and the District of Columbia conduct lotteries. Twenty-eight States have statutes or administrative regulations similar to section 13 of the Law that contain a general prohibition on the assignment of lottery winnings, and an exception allowing payment of winnings to "a person" or "any person" pursuant to an "appropriate judicial order" or a "judicial order." In support of their interpretation, defendants

cite several decisions from other jurisdictions where the courts interpreted similar lottery statutes and held that assignment was not permitted pursuant to a judicial order. In *McCabe v. Director of New Jersey Lottery Comm'n* (1976), 143 N.J. Super. 443, 363 A.2d 387, the court reviewed the pertinent legislative history and found no evidence of the legislative intent behind the "no assignment" clause. The court refused to allow assignment of the winnings pursuant to an appropriate judicial order, stating:

"This court perceives at least three reasons why New Jersey and other [S]tates opt for the payment to the top lottery winners of their substantial prize money in installments over a number of years:

1. The State has the use of the prize money without the obligation to pay interest for a considerable period of time;

2. The very substantial tax liability to the winner on large prizes is minimized; and

3. The lottery winner, whether or not he needs the *parens patriae* protection of the State, is legislatively insulated from his own human frailties and the possible excesses to which he would otherwise be subjected by suddenly coming into possession of an enormous amount of cash.

To allow a lottery winner to anticipate, by assignment to a finance company or otherwise, all or a portion of his prize money which is payable by legislative design over a period of years, either for the purpose of consolidating his loan obligations incurred for business reasons or for the purpose of the immediate creation of a pool of money not otherwise available to him, would invite a Pandora's box of avowed worthy causes and thus, contravene an unexpressed but readily apparent intent behind the law." *McCabe*, 143 N.J. Super. at 448, 363 A.2d at 390.

In *Converse v. Lottery Comm'n* (1989), 56 Wash. App. 431, 783 P.2d 1116, the court held that the lottery statute did not permit the voluntary assignment of lottery winnings pursuant to an appropriate judicial order. The court stated that under such an interpretation the exception would swallow the rule and would burden the lottery with the administrative expense of paying the winner's annual payments to various assignees. The court also relied on the *parens patriae* argument used in *McCabe*. (*Converse*, 56 Wash. App. at 434-35, 783 P.2d at 1118.) In *Lotto Jackpot Prize of December 3, 1982 Won by Marianov* (1993), 533 Pa. 402, 625 A.2d 637, the Pennsylvania Supreme Court construed the phrase "appropriate judicial order" in the lottery statute as referring to an order in a separate proceeding where disposition of a lottery prize is an appropriate remedy, such as an order directing payment of lottery winnings to a former spouse as part

of equitable distribution or spousal support. (*Marianov*, 533 Pa. at 407, 625 A.2d at 640.) The court stated that to interpret the statute as allowing voluntary assignment pursuant to a judicial order would transform the phrase "appropriate judicial order" to mean "with leave of the court." The court concluded that under this interpretation the exception would swallow the rule. The court noted the lottery statute's lack of standards for determining when a prize is properly assignable. The court also cited *Converse* and *McCabe*. *Marianov*, 533 Pa. at 406-07, 625 A.2d at 639-40.

In *In re Lousiana Lottery Corp. Grand Prize Drawing of March 21, 1992* (La. App. 1994), 643 So. 2d 843, 846, the court held that allowing the voluntary assignment of lottery winnings pursuant to a judicial order would render the general prohibition of assignment "virtually meaningless." The court also cited *Marianov* and *Converse*. (*Lousiana Lottery*, 643 So. 2d at 846.) In *R&P Capital Resources, Inc. v. California State Lottery* (1995), 31 Cal. App. 4th 1033, 37 Cal. Rptr. 2d 436, the court interpreted the phrase "appropriate judicial order" by looking at another exception to the assignment prohibition clause of the lottery statute which allowed payment to a deceased lottery winner's estate or trust. The court concluded these provisions were not really exceptions to the prohibition against assignment, but instead, applied to determine ownership when the winner was deceased. The court held that the "appropriate judicial order" exception referred only to an order entered following a contested proceeding to determine ownership. The court stated any other interpretation would allow the exception to swallow the "no assignment" rule. The court cited the statute's lack of standards for courts to use in determining whether to approve assignments. Additionally, the court relied on the *parens patriae* rationale, citing *Marianov, Converse*, and *McCabe*. *R&P*, 31 Cal. App. 4th at 1037-40, 37 Cal. Rptr. 2d at 439-40.

Plaintiffs and Singer Friedlander Corporation, as *amicus curiae*, cite several unpublished trial court orders and opinions from New Jersey, New York, Arizona, Michigan, Vermont, West Virginia, Montana, and Texas approving the voluntary assignment of lottery prize winnings. With the exception of New Jersey, there are no contradictory published opinions from appellate courts in those States. Although these unpublished orders and opinions are not precedential, they may indicate that the lottery departments in those States are not disputing the voluntary assignment of lottery prizes.

■ We need not rely on these decisions because a plain reading of section 13 of the Law indicates that the voluntary assignment of winnings is prohibited. Clause one of section 13 of the Law, in clear broad language, absolutely prohibits a lottery winner from assigning

his prize winnings. Clause two begins with the language, "Notwithstanding any other provision of this Section" (20 ILCS 1605/13 (West 1992)), which does indicate that clause two is an exception to clause one, but as other courts have noted, it is unusual for an exception to completely negate the rule. Clause two states that "any person pursuant to an appropriate judicial order may be *paid* the prize to which a winner is entitled." (Emphasis added.) (20 ILCS 1605/13 (West 1992).) Clause two does not state that a lottery winner can *assign* his prize winnings pursuant to an appropriate judicial order. There is a difference between an order enforcing a judgment and an order declaring an assignment is valid. Because clause two is an exception to the general rule prohibiting assignments, it must be narrowly construed. (*People v. Lofton* (1977), 69 Ill. 2d 67, 71, 370 N.E.2d 517, 519; *Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 519, 153 N.E.2d 72, 74; *Doubler v. Doubler* (1952), 412 Ill. 597, 600, 107 N.E.2d 789, 790.) We interpret clause two as applying to judicial orders entered in separate proceedings where disposition of a lottery prize is an appropriate remedy, such as an order directing payment of prize winnings to a former spouse as part of an equitable distribution or spousal support in a marital dissolution case, for a child support arrearage, or a garnishment order allowing a debtor to satisfy a judgment from a debtor-lottery winner.

In summary, we conclude that section 13 of the Law prohibits the voluntary assignment of lottery prize winnings pursuant to a judicial order as sought in this case. Therefore, the trial court erred in entering an order approving the assignment agreement between plaintiffs.

Reversed.

LUND and GREEN, JJ., concur.