RICHARD B. BERLIN, JR., Plaintiff-Appellee, v. SARAH BUSH LINCOLN HEALTH CENTER, Defendant-Appellant.

Fourth District   No. 4—95—0569

Argued February 13, 1996.—Opinion filed April 12, 1996.

GREEN, J., specially concurring.

McCULLOUGH, J., dissenting.

Michael Duffy (argued), Adele Waller, and Afoma M. Mpi, all of Gardner, Carton & Douglas, of Chicago, and Henry E. Kramer and William A. Sunderman, both of Brainard, Bower & Kramer, of Charleston, for appellant.

D. Cameron Dobbins (argued), of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

Joseph T. Butz and Jerry P. Clousson, both of Clousson & Butz, of Chicago, for *amici curiae* McLean Area Medical Association, Peoria County Medical Society, Downstate Physician Alliance, Illinois Heartland Physicians Association, and Independent Physicians Network, Inc.

Thaddeus J. Nodzenski and Mark D. Deaton, both of Illinois Hospital & HealthSystems Association, of Naperville, and Michael R. Callahan, of Katten, Muchin & Zavis, of Chicago, for *amici curiae* Illinois Hospital & HealthSystems Association and Metropolitan Chicago Healthcare Council.

Saul J. Morse and Robert John Kane, both of Illinois State Medical Society, of Springfield, and Michael Ile, of American Medical Association, of Chicago, for *amici curiae* Du Page County Medical Society and Illinois State Medical Society, Champaign County Medical Society, Chicago Medical Society, Lake County Medical Society, American Medical Association, Winnebago County Medical Society, and Livingston County Medical Society.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1995, plaintiff, Richard B. Berlin, Jr., M.D., filed a complaint for declaratory judgment and a motion for summary judgment in which he sought to have a restrictive covenant contained in a general surgery employment agreement with the defendant, Sarah Bush Lincoln Health Center (Health Center), declared unenforceable. The Health Center filed a cross-motion for summary judgment. In June 1995, the trial court granted Dr. Berlin's motion for summary judgment, finding that the restrictive covenant was unenforceable because the Health Center, through its general surgery employment agreement with Dr. Berlin, was practicing medicine in violation of the statutory prohibition on the corporate practice of medicine.

The Health Center appeals, arguing that the trial court erred by (1) granting Dr. Berlin's motion for summary judgment on that basis, (2) denying the Health Center's cross-motion for summary judgment, and (3) finding that the restrictive covenant is unclear and ambiguous. We disagree with the Health Center's first argument and affirm.

I. BACKGROUND

In December 1992, the Health Center and Dr. Berlin entered into a general surgery employment agreement, whereby the Health Center employed Dr. Berlin to render medical services for five years. Section 2.3 of the employment agreement mandated that Dr. Berlin "devote his full working time and attention to the practice of medicine for the hospital." Section 9.1 of the employment agreement included a restrictive covenant, providing as follows:

"During the term of this Agreement, and any renewal period thereof, and for a period of two years thereafter, Physician agrees that Physician shall not, directly or indirectly, invest in, own, manage, operate, control, be employed by, participate in, or be

connected in any manner with the ownership, management, operation, or control of any person, firm, or corporation engaged in competition with Hospital in providing health services or facilities within a 50[-]mile radius of Hospital."

In February 1994, Dr. Berlin resigned from the Health Center and became an employee of a Carle Clinic facility located approximately one mile from the Health Center. The Health Center filed a motion for injunctive relief against Dr. Berlin, and Dr. Berlin was subsequently enjoined from working for any competing healthcare provider within a 50-mile radius of the Health Center.

Dr. Berlin appealed the preliminary injunction, and this court reversed and remanded the case, holding that the trial court had improperly denied Dr. Berlin's motion for substitution of judge. *Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184, 189-90, 643 N.E.2d 276, 280-81 (1994).

In January 1995, Dr. Berlin filed a complaint for declaratory judgment and a motion for summary judgment in which he sought to have the restrictive covenant declared unenforceable. The Health Center filed a cross-motion for summary judgment. Both motions incorporated by reference the prior record entered in the preliminary injunction proceeding. In June 1995, after reviewing the evidence and hearing oral arguments, the trial court granted Dr. Berlin's motion for summary judgment.

## II. THE SUMMARY JUDGMENT IN FAVOR OF DR. BERLIN

The Health Center argues that the trial court erred by granting Dr. Berlin's motion for summary judgment, specifically contending that the doctrine prohibiting the corporate practice of medicine does not apply to nonprofit hospitals because (1) the cases recognizing such a doctrine did not involve hospitals; (2) no legislative enactments subsequent to the Medical Practice Act of 1923 (1923 Act) (Ill. Rev. Stat. 1923, ch. 91, par. 1 *et seq.*), including the Medical Practice Act of 1987 (1987 Act) (225 ILCS 60/1 *et seq.* (West 1994)), specifically prohibit nonprofit hospitals from employing physicians; and (3) public policy concerns underlying the doctrine prohibiting the corporate practice of medicine do not apply to situations involving a licensed nonprofit hospital. The Health Center alternatively contends that if the 1987 Act prohibits the corporate practice of medicine, hospitals are exempt under section 4 of the 1987 Act (225 ILCS 60/4 (West 1994)) because they are licensed under the Illinois Hospital Licensing Act (Licensing Act) (210 ILCS 85/1 *et seq.* (West 1994)).

Summary judgment is appropriate when the pleadings, depositions, and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d

165, 176, 651 N.E.2d 1105, 1110 (1995); 735 ILCS 5/2—1005(c) (West 1994). On review, this court considers *de novo* the propriety of granting the motion for summary judgment (*Golla v. General Motors Corp.*, 261 Ill. App. 3d 143, 147, 633 N.E.2d 193, 196 (1994)), and we therefore determine whether Dr. Berlin was entitled to summary judgment as a matter of law (see *Cates v. Cates*, 156 Ill. 2d 76, 78, 619 N.E.2d 715, 716 (1993)).

## A. Doctrine Prohibiting the Corporate Practice of Medicine

■ The Supreme Court of Illinois in *Dr. Allison, Dentist, Inc. v. Allison*, 360 Ill. 638, 196 N.E. 799 (1935), held that a corporation employing licensed dentists was engaging in the practice of dentistry in violation of section 18 of "An Act to regulate the practice of dental surgery and dentistry ***" (Ill. Rev. Stat. 1935, ch. 91, par. 72), and, therefore, had no legal right to enforce a restrictive covenant against a departing dentist. In so holding, the supreme court wrote the following:

> "The practice of a profession is everywhere held to be subject to licensing and regulation under the police power and not subject to commercialization or exploitation. [Citation.] *** The qualifications [to practice a profession] include personal characteristics, such as honesty, guided by an upright conscience and a sense of loyalty to clients or patients, even to the extent of sacrificing pecuniary profit, if necessary. *** No corporation can qualify." *Allison*, 360 Ill. at 641-42, 196 N.E. at 800.

One year later, the Supreme Court of Illinois in *People v. United Medical Service, Inc.*, 362 Ill. 442, 454-55, 200 N.E. 157, 163 (1936), interpreted the 1923 Act (which read, in part, "[n]o person shall practice medicine *** without a valid, existing license so to do" (Ill. Rev. Stat. 1923, ch. 91, par. 2), and held that a corporation practices medicine in violation of the 1923 Act when it employs physicians to practice medicine because a corporation cannot be so licensed. The supreme court rejected the corporation's contentions that (1) it was not practicing medicine, and (2) its fee arrangement, whereby patients paid fees directly to the corporation, did not interfere with the professional relationship between the patients and the licensed physicians who treated them in its clinic. *United Medical Service*, 362 Ill. at 455, 200 N.E.2d at 163.

In holding that corporations cannot be licensed to practice medicine, the supreme court also relied on its decision in *Allison* and wrote the following:

> "The legislative intent manifest from a view of the entire law [the 1923 Act] is that only individuals may obtain a license thereunder. No corporation can meet the requirements ***. ***

\*\*\* 'To practice a profession,' the [*Allison*] court said, 'requires something more than the financial ability to hire competent persons to do the actual work. It can be done only by a *duly qualified human being*, and to qualify something more than mere knowledge or skill is essential.' " (Emphasis added.) *United Medical Service*, 362 Ill. at 454-56, 200 N.E.2d at 163, quoting *Allison*, 360 Ill. at 641, 196 N.E.2d at 800.

In the 60 years since its decision in *United Medical Service*, the supreme court has not directly addressed—or overruled or modified—its decision establishing the doctrine prohibiting the corporate practice of medicine.

## B. *Stare Decisis*

The Health Center first contends that because *Allison* and *United Medical Service*—the decisions which recognized the prohibition on the corporate practice of medicine—involved general business corporations, the rule of *stare decisis* does not prevent the Health Center, as a nonprofit hospital corporation, from employing physicians. We disagree.

Although the Health Center correctly points out that *United Medical Service* and *Allison* involved general business corporations, the supreme court in *United Medical Service* clearly stated that, under the 1923 Act, only *individuals* may obtain a license to practice medicine and that *no corporation* can qualify. Thus, the supreme court's holding in *United Medical Service* constitutes a proscription against any type of corporate entity practicing medicine by employing licensed physicians, including nonprofit hospitals. We further note that while the Health Center repeatedly emphasized its nonprofit status in its briefs to this court, its counsel conceded at oral argument—with commendable candor—that a decision permitting it to employ Dr. Berlin would apply just as well to a *for-profit* hospital which hired a physician to practice medicine as its employee.

The Health Center also argues that because the *United Medical Service* and *Allison* decisions are 60 years old, this court should somehow accord them less weight. We disagree.

■ *Stare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed. *Charles v. Seigfried*, 165 Ill. 2d 482, 492, 651 N.E.2d 154, 159 (1995). The United States Supreme Court, in a different context, recently addressed the doctrine of *stare decisis* in the area of statutory construction and wrote the following:

"Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis* \*\*\*. [Citations.]

Our reluctance to overturn precedents derives in part from institutional concerns about the relationship of the judiciary to

Congress. One reason that we give great weight to *stare decisis* in the area of statutory construction is that 'Congress is free to change this Court's interpretation of its legislation.' *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736[, 52 L. Ed. 2d 707, 719, 97 S. Ct. 2061, 2070] (1977). *** True, there may be little in logic to defend [the statutory provision]***. *** Even so, Congress, not this Court, has the responsibility for revising its statutes. Were we to alter our statutory interpretations from case to case, Congress would have less reason to exercise its responsibility to correct statutes that are thought to be unwise or unfair." *Neal v. United States*, 516 U.S. 284, 295-96, 133 L. Ed. 2d 708, 719-20, 116 S. Ct. 763, 768-69 (1996).

The Supreme Court of Illinois in *Froud v. Celotex Corp.*, 98 Ill. 2d 324, 336, 456 N.E.2d 131, 137 (1983), also addressed *stare decisis* in the realm of statutory construction and wrote the following: "Considerations of *stare decisis* weigh more heavily in the area of statutory construction *** because such a departure [from precedent] *** amounts to an amendment of the statute itself ***."

■ In light of the case law which accords greater weight to the doctrine of *stare decisis* in the realm of statutory construction, we adhere to the holdings in *Allison* and *United Medical Service* and the premise implicit in the holding of *United Medical Service*, which judicially interpreted the 1923 Act as embodying a prohibition on the corporate practice of medicine.

## C. Legislative Response

The Health Center next contends that hospitals are exempt from the prohibition on the corporate practice of medicine because the legislature has chosen not to expand the limitations of *United Medical Service* and *Allison* by specifically prohibiting hospitals' employment of physicians. We disagree with the Health Center's analysis.

As we discussed earlier, the supreme court in *United Medical Service* interpreted the 1923 Act as embodying a prohibition on the corporate practice of medicine. Further, over the years, the legislature has chosen to create specific and limited exceptions to that prohibition by expressly recognizing that only certain types of corporations may directly employ physicians to practice medicine.

In 1951, the legislature enacted the Voluntary Health Services Plans Act (Plans Act), under which a corporation organized to establish and operate a voluntary health services plan may enter into employment agreements with physicians licensed to practice medicine (215 ILCS 165/2 (West 1994)). The Plans Act specifically prohibits corporate interference with the professional judgment of physicians who treat the plan subscribers. 215 ILCS 165/7 (West

1994). Additionally, the Plans Act mandates that "specimen" employment agreements must be submitted to the Director of the Department of Insurance (Director) before a corporate charter can be approved (215 ILCS 165/8 (West 1994)).

Under the Medical Corporation Act (805 ILCS 15/3 (West 1994)), first enacted in 1963, one or more persons licensed to practice medicine may form a corporation under the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 1994)) to own, operate, and maintain an establishment for the study, diagnosis, and treatment of human illnesses, but the Medical Corporation Act mandates that "medical or surgical treatment, consultation or advice may be given by employees of the corporation only if they are licensed pursuant to the [1987 Act (805 ILCS 15/2 (West 1994))]." 805 ILCS 15/2 (West 1994).

In 1969, the legislature enacted the Professional Service Corporation Act (Professional Corporation Act) (805 ILCS 10/1 *et seq.* (West 1994)), under which a group of individuals may organize as a corporation (1) to provide one category of professional service, such as medicine, or (2) to provide "related" professional services (section 3.6 of the Professional Corporation Act specifically provides that medicine, podiatry, and dentistry may be combined and offered as "related" services). See 805 ILCS 10/3.4, 3.6 (West 1994). Section 3.4 of the Professional Corporation Act mandates that all corporate shareholders, directors, officers, agents and employees (except ancillary personnel) must be licensed to provide the particular professional service or services they intend to render. See 805 ILCS 10/3.4 (West 1994).

The Health Maintenance Organization Act (HMO Act), enacted in 1974, specifically granted authority to health maintenance organizations (HMOs) to contract with or employ health care providers (215 ILCS 125/2—3(c) (West 1994)). The HMO Act provides for a comprehensive regulatory scheme, including a requirement that an HMO applicant submit to the Director a copy of the contract to be entered into between the HMO and health care providers (215 ILCS 125/2—1(c)(5) (West 1994)). The Limited Health Service Organization Act (215 ILCS 130/1001 *et seq.* (West 1994)), enacted in 1989, provides for a comprehensive regulatory scheme similar to that of the HMO Act.

The legislature most recently created a specific exception to the prohibition on the corporate practice of medicine when it amended the Limited Liability Company Act (Pub. Act 89—201, eff. January 1, 1996 (1995 Ill. Legis. Serv. 2512, 2516-17 (West)) (amending 805 ILCS 180/1—25, 5—1 (West 1994))), to provide that such a company may

be formed to practice medicine only if all members, managers, and organizers are licensed to practice medicine pursuant to the 1987 Act.

In the 1987 Act, the legislature incorporated these statutory exceptions to the 1923 Act's prohibition on the corporate practice of medicine by hospitals, but it did not otherwise alter that prohibition. See Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.* Further, this court should presume that the legislature, when legislating in the area of health care, acts with full knowledge of judicial interpretations of its prior enactments, especially those interpretations that are long-standing. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 388, 604 N.E.2d 929, 933 (1992).

We also note that although the legislature has addressed hospitals as employers, it has never directly addressed hospitals as employers of physicians. For instance, section 7 of the Physician Assistant Practice Act of 1987 provides that hospitals may employ physician assistants even though those assistants are functioning under the supervision of licensed physicians. 225 ILCS 95/7 (West 1994) ("Nothing in this Act shall be construed as to prohibit the employment of physician assistants by a hospital *** where such physician assistants function under the supervision of a supervising physician"). However, in amending section 10.4 of the Licensing Act—outlining procedures for granting, renewing, denying, or limiting medical staff privileges—the legislature declined an opportunity to authorize hospitals to employ physicians (as opposed to granting *medical staff privileges* or *clinical privileges*) so as to create an exception for hospitals to the doctrine prohibiting the corporate practice of medicine. See Pub. Act 88—654, eff. January 1, 1995 (amending 210 ILCS 85/10.4 (West 1994)). The legislature also recently set forth the requirements for claims for medical, hospital, or other healing art malpractice based upon apparent agency, and again declined an opportunity to specifically authorize hospitals to employ physicians. See Pub. Act 89—7, eff. March 9, 1995 (1995 Ill. Legis. Serv. 224, 230 (West)) (adding 735 ILCS 5/2—624 (West 1994)).

Reviewing the legislative action since *United Medical Service*, we conclude that the legislature has acquiesced in the supreme court's interpretation of the 1923 Act and, thereafter, has chosen to provide only very specific and limited exceptions to the prohibition on the corporate practice of medicine, none of which provides an exception for hospitals. We reaffirm what this court recently wrote regarding our role in addressing legislative enactments: "We need not pass on the wisdom of such a rule—our role is to determine the legislature's intent, not to second-guess its decisions." *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 775 (1996).

## D. The Supreme Court Decision in *Darling*

The Health Center next contends that the Supreme Court of Illinois in *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 211 N.E.2d 253 (1965), specifically recognized that hospitals may employ physicians. We disagree.

The issue in *Darling* was whether the hospital could be held liable for either its failure to have a sufficient number of trained nurses or its failure to require consultation between members of its independent medical staff in complicated cases. The supreme court held that the hospital may owe a duty, independent of any relationship between a physician and patient, to review and supervise the medical care administered to a patient. *Darling*, 33 Ill. 2d at 332, 211 N.E.2d at 257. In so holding, the supreme court also wrote the following:

> " 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of "hospital facilities" expects that the hospital will attempt to cure him, not that its nurses or other employes [*sic*] will act on their own responsibility.' (Fuld, J., in *Bing v. Thunig*, (1957) 2 N.Y.2d 656, 143 N.E.2d 3, 8.)" *Darling*, 33 Ill. 2d at 332, 211 N.E.2d at 257.

Although the supreme court in *Darling* quoted language from a New York case regarding the fact that hospitals do regularly employ physicians, the court never addressed, considered, or ruled upon the legality of Illinois hospitals' employing physicians under the Medical Practice Act. *Darling*, 33 Ill. 2d at 332, 211 N.E.2d at 257. Further, the *Darling* court never even mentioned its decision in *United Medical Service*—the very case which established the doctrine prohibiting the corporate practice of medicine. Accordingly, we view the language in *Darling* as (1) *dicta* addressing issues in that tort case, and (2) being far from a definitive reassessment of what the supreme court stated in *United Medical Service*.

## E. Public Policy Considerations

Both parties and *amici curiae* also make several policy arguments. The Health Center argues that the concern about lay control over medical professionals underlying the prohibition on the

corporate practice of medicine does not apply in the case of a licensed hospital. Further, the Health Center asserts that divided physician loyalty does not arise because the loyalty of both the hospital and the physician is to the patient. Last, the Health Center contends that its service to the rural community and containment of health-care costs would likely suffer if its ability to attract and retain physicians through employment is limited.

Dr. Berlin argues that if hospitals are allowed to employ physicians, the lay employer would have total control over which patients the physicians could treat, the fees charged for services, where patients are hospitalized, and the medications, equipment, and supplies physicians used, thereby unduly limiting physicians' treatment options.

As we discussed earlier, we must accord great weight to the doctrine of *stare decisis* in the area of statutory construction; to do otherwise would amount to an amendment of the statute itself. See *Froud*, 98 Ill. 2d at 336, 456 N.E.2d at 137. The question of whether to depart from precedent in order to recognize an exception to the doctrine prohibiting the corporate practice of medicine for hospitals lies with the policy-making agency of state government, which is the General Assembly, and to date it has not seen fit to so legislate.

In a different context, the Supreme Court of Illinois recently wrote the following on the issue of deference to the legislature on important policy matters:

"The primary expression of Illinois public and social policy should emanate from the legislature. This is especially true regarding issues like the present one [whether to recognize a cause of action against social hosts who serve alcohol to minors], where there is disagreement on whether a new rule is warranted. \*\*\*

\*\*\* The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to weigh and properly balance the many competing societal, economic, and policy considerations involved." *Charles*, 165 Ill. 2d at 493, 651 N.E.2d at 160.

Because the policy matter in the present case is one of profound consequence, and because the case law demands judicial restraint in such matters, we conclude that any decision to exempt hospitals from the doctrine prohibiting the corporate practice of medicine should come only from the legislature after it has analyzed the relevant considerations. The legislature thus far has not acted, and until it does, we will continue to follow existing law.

## F. The 1987 Act

Last, the Health Center argues that even if the 1987 Act prohibits the corporate practice of medicine, it does not apply to the Health Center's employment of Dr. Berlin because hospitals are exempt under section 4 of the 1987 Act (225 ILCS 60/4 (West 1994)), because they are licensed under the Illinois Hospital Licensing Act (Licensing Act) (210 ILCS 85/1 *et seq.* (West 1994)). We disagree.

A court's primary function in interpreting a statute is to determine and give effect to the legislature's intent in enacting the statute, and legislative intent is best determined by the language of the statute. *Walker v. Rogers*, 272 Ill. App. 3d 86, 90, 650 N.E.2d 272, 275 (1995). A court construing a statute should read it as a whole and give the statutory language its plain meaning. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 484, 644 N.E.2d 817, 826 (1994).

Section 4 of the 1987 Act provides, in relevant part, that "[t]his Act shall not apply to persons lawfully carrying on their particular profession or business under any valid existing regulatory Act of this State." 225 ILCS 60/4 (West 1994).

The Licensing Act defines "hospital" in the following manner:

> " 'Hospital' means any institution, place, building, or agency, public or private, whether organized for profit or not, devoted primarily to the *maintenance and operation of facilities* for the diagnosis and treatment or care of 2 or more unrelated persons \*\*\*." (Emphasis added.) 210 ILCS 85/3(A) (West 1994).

The Licensing Act further provides that a permit to operate a hospital should be issued under the following circumstances:

> "if [the Director of Public Health] finds (1) that the applicant is fit, willing, and able to provide a proper standard of *hospital service* for the community \*\*\*, (2) that the financial resources available to the applicant demonstrate an ability to construct, maintain, and operate a hospital \*\*\*, and (3) that safeguards are provided which assure *hospital operation and maintenance* consistent with the public interest having particular regard to safe, adequate, and efficient hospital facilities and services." (Emphasis added.) 210 ILCS 85/6(a) (West 1994).

Additionally, although the Licensing Act provides that licensed hospitals may grant, limit, renew, or deny "medical staff membership and clinic staff privileges," it does not grant hospitals the right to employ physicians. 210 ILCS 85/10.4 (West 1994).

Reading the Licensing Act as a whole to determine and give effect to the legislature's intent (*Walker*, 272 Ill. App. 3d at 90, 650 N.E.2d at 275; *Central Illinois Public Service Co.*, 268 Ill. App. 3d at

484, 644 N.E.2d at 826), we conclude that nothing in that act expressly authorizes hospitals to *render medical services* in any manner, or *to employ* physicians to practice medicine for the hospitals. See in contrast *St. Francis Regional Medical Center, Inc. v. Weiss*, 254 Kan. 728, 744, 869 P.2d 606, 617 (1994) (where statute mandated that "[e]very hospital *** shall furnish *** medical or other service"). Under the Licensing Act, a hospital is an entity *operating a facility* for the diagnosis and treatment of illnesses by physicians who enjoy medical staff membership or clinic staff privileges. The mere fact that hospitals must be licensed and regulated does not grant hospitals the right to *practice medicine* or to *employ physicians* to practice medicine in their stead in circumvention of the statutory prohibition on the corporate practice of medicine embodied in the 1987 Act. Therefore, we conclude that hospitals are not exempt under section 4 of the 1987 Act because they are licensed under the Licensing Act.

■ Accordingly, we hold that the trial court did not err in granting Dr. Berlin's motion for summary judgment based on its finding that the Health Center, through its general surgery employment agreement with Dr. Berlin, violated the statutory prohibition on the corporate practice of medicine.

In so holding, we do not decide (because the issue is not before us under the circumstances of this case) whether hospitals—to the extent they are statutorily required to provide emergency treatment for life-threatening injuries by the Emergency Medical Treatment Act (see 210 ILCS 70/1 (West 1994))—are exempt under section 4 of the 1987 Act for providing such emergency medical treatment. We recognize the claim that a statutory grant of authority to hospitals to practice medicine may be implicit in the Emergency Medical Treatment Act, but we decline to decide this issue.

### III. CONCLUSION

In closing, we commend the trial court for its thoughtful trial court memorandum, which we found helpful.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

JUSTICE GREEN, specially concurring:

I concur in the decision to affirm the summary judgment in favor of the plaintiff on the basis that the restrictive covenant was unenforceable because it violated prohibitions against the type of practice of medicine which was involved. I agree that none of the legislation ameliorating the holdings of *United Medical Service* and

*Allison* is applicable to the situation here. I also agree that even after 60 years, the Supreme Court of Illinois has not set aside the holdings of those cases. We have a duty under the most compelling aspect of the rule of *stare decisis* to follow those decisions because they are decisions of a higher court which we cannot overrule.

I appreciate that Justice Steigmann has limited the holding of his opinion to avoid deciding whether the Emergency Medical Treatment Act authorizes hospitals to hire physicians and surgeons to furnish emergency medical services. For reasons I will state, I would, nevertheless, narrow our holding even further. Indeed, I would limit it as much as we can. My understanding is that under the agreement of the parties, Dr. Berlin acted as an employee of defendant even when he was treating or advising patients who were not hospitalized with defendant. That seems to me to be the clearest violation of the remains of the precedent of *United Medical Service* and *Allison.* I would leave for another day the question of the status of physicians or surgeons hired to treat hospital patients regardless of whether the treatment involved occurs on an emergency basis.

My concern arises because of evidence that many hospitals, acting in good faith, have hired radiologists, pathologists, anesthesiologists and even general practitioners to treat hospital patients in other than emergency room situations. The statement in *Darling* that hospitals "regularly employ on a salary basis a large staff of physicians" would indicate this is so. Other actions by the supreme court give similar indications.

In *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.*, 57 Ill. 2d 298, 312 N.E.2d 259 (1974), a suit on behalf of a minor was brought against a hospital for injuries alleged to have resulted from the negligence of an emergency room doctor and nurse, both of whom were hospital employees. See *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.*, 10 Ill. App. 3d 465, 466-67, 294 N.E.2d 319, 321 (1973). The plaintiff had settled with the doctor and the supreme court held the release did not release the employer of the doctor's negligence when the release expressly reserved that right. That court also held that *res ipsa loquitur* was applicable to that case. The court made no mention of any illegality in the relationship between the doctor and the hospital nor did it say that the employer-employee relationship was justified because the doctor was working in an emergency room. If the supreme court was concerned with the employment of a doctor by a hospital would it not have so stated?

In *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1993), a hospital was also held vicariously liable for the negligence of an emergency room physician. This doctor was actually

an independent contractor who billed the patients separately from billing by the hospital. The liability was imposed on the theory the doctor was an apparent agent of the hospital. The rationale of the decision was that (1) hospitals advertise they are "full-care modern health facilities"; and (2) under modern conditions, the public is unaware of the status of hospital personnel. *Gilbert*, 156 Ill. 2d at 519-22, 622 N.E.2d at 792-94. If the supreme court felt it was holding that the doctor was ostensibly acting in a capacity which would not be legally permitted or acting in a capacity justified only by the Emergency Medical Treatment Act, the court would likely have so stated.

I feel that confusion exists as to the relationships that can properly exist between doctors and hospitals and that clarification in that respect by the Supreme Court of Illinois or by the legislature is desirable. In the meantime, we have a duty to decide this case, which we are hereby doing. I make this special concurrence because I deem the present public interest is best served by a narrow decision.

JUSTICE McCULLOUGH, dissenting:

I agree with the Health Center's contention that there is not now a viable doctrine against corporate practice of medicine. The Health Center was not practicing medicine and there is no prohibition against the Health Center employing physicians.

The supreme court's holding in *United Medical Service* found the 1923 Act prohibited the corporate entity practice of medicine. The rationale of *Allison*, as adopted by *United Medical Service*, finding the practice of a profession not subject to incorporation, is no longer followed. The majority refers to legislative enactments which do allow corporations to be involved in health services. The Plans Act, Medical Corporation Act, Professional Corporation Act and HMO Act allow incorporation.

The contract entered into between the parties did not permit the Health Center to practice medicine. Nor did the contract compromise Dr. Berlin's practice of medicine.

The Health Center does not treat patients. The *Darling* court accepts the premise that hospitals "regularly employ on a salary basis a large staff of physicians." *Darling*, 33 Ill. 2d at 332, 211 N.E.2d at 257. The Licensing Act should not be construed to prohibit hospitals or entities such as the Health Center from entering into contracts with licensed physicians so long as there is no violation of the physician's Hippocratic oath.

I would not grant either motion by the respective parties for summary judgment.