JOHN P. HOLDEN, Plaintiff and Counterdefendant-Appellee, v. ROCKFORD MEMORIAL HOSPITAL, Defendant and Counterplaintiff-Appellant.

Second District    No. 2—96—0784

Opinion filed March 27, 1997.

John J. Holevas, Scott C. Sullivan, and Timothy J. Rollins, all of Williams & McCarthy, P.C., of Rockford, for appellant.

Michael J. Hedeen and Richard R. Haldeman, both of Haldeman & Associates, of Rockford, for appellee.

Jerry P. Clousson and Joseph T. Butz, both of Clousson & Butz, of Chicago, for amici curiae Downstate Physicians Alliance, Illinois Heartland Physicians Association, Independent Physicians Network, McLean Area Medical Association, and Peoria County Medical Society.

Thaddeus J. Nodzenski and Mark D. Deaton, both of Illinois Hospital & HealthSystems Association, of Naperville, and Michael R. Callahan, of Katten, Muchin & Zavis, of Chicago, for amici curiae Illinois Hospital & Health-Systems Association and Metropolitan Chicago Healthcare Council.

Robert John Kane and Saul J. Morse, both of Illinois State Medical Society, of Springfield, and Michael L. Ile, of American Medical Association, of Chicago, for amici curiae American Medical Association, Chicago Medical Society, Illinois State Medical Society, Lake County Medical Society, and Winnebago County Medical Society.

JUSTICE COLWELL delivered the opinion of the court:

Defendant and counterplaintiff, Rockford Memorial Hospital, appeals from the trial court's order granting summary judgment. The trial court determined as a matter of law that an employment agreement between the hospital and plaintiff and counterdefendant, Dr. John Holden, was unenforceable because under the corporate-practice-of-medicine doctrine hospitals are prohibited from employing physicians. On appeal, the hospital contends the corporate-practice-of-medicine doctrine does not apply to hospitals and that the employment of physicians by hospitals is not against public policy. We affirm.

Dr. Holden and Rockford Memorial Hospital (hospital) entered into an employment agreement on May 28, 1993. Under the agreement, Dr. Holden was an "employee of the [h]ospital" and was to "provide reproductive endocrinology services" in that department. Further, pursuant to the agreement, Dr. Holden was to "[d]evote all professional practice time to or on behalf of and at the direction" of the hospital. The agreement stated also:

> "In the event this Employment Agreement is terminated for any reason (or expires), whether during or at the conclusion of the term of this Agreement, the Physician shall, for a period of two years after the termination or expiration date, be barred from

practicing reproductive endocrinology in the following counties of the Hospital's service area: in Wisconsin, Rock County; and in Illinois, Winnebago, Boone, Ogle, Whiteside, Lee, DeKalb, McHenry, Stephenson, and Kane."

On October 26, 1995, Dr. Holden submitted his resignation. He remained as an employee of the hospital through February 28, 1996. On March 4, 1996, Dr. Holden filed a complaint for declaratory judgment and injunctive relief seeking a declaration that his employment agreement with the hospital was void and unenforceable as a matter of law. The hospital filed a counterclaim for injunctive relief against Dr. Holden and damages from his breach of the employment agreement.

Dr. Holden then filed a motion for summary judgment. The hospital filed a cross-motion for summary judgment. After reviewing the evidence and hearing oral arguments, the trial court granted Dr. Holden's motion. Specifically, the trial court stated that it was bound, as a matter of law, to follow the fourth district's ruling in *Berlin v. Sarah Bush Lincoln Health Center*, 279 Ill. App. 3d 447 (1996), in reaching its decision.

In *Berlin*, the fourth district was presented with the same issue that is before this court. In *Berlin*, a physician filed a complaint for declaratory judgment seeking to have his employment agreement with a health center declared unenforceable. As is true in the instant case, the health center was a not-for-profit medical provider. See *Berlin*, 279 Ill. App. 3d at 452. The physician in *Berlin* stated that the agreement was void because by employing physicians the health center was violating the corporate-practice-of-medicine doctrine. The *Berlin* court agreed with the physician and upheld the trial court's order granting summary judgment. *Berlin*, 279 Ill. App. 3d at 459.

On appeal, the hospital contends that the *Berlin* case was wrongly decided because the corporate-practice-of-medicine doctrine does not apply to licensed hospitals. Further, the hospital argues that there is no public policy that prohibits licensed hospitals from employing physicians.

■ Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bolingbrook Equity I Ltd. Partnership v. Zayre of Illinois, Inc.*, 252 Ill. App. 3d 753, 764 (1993). Summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Therefore, where a reasonable person can

draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard*, 154 Ill. 2d at 102. Finally, our review of the trial court's entry of summary judgment is *de novo*. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

First, we note that the trial court was bound to follow the *Berlin* decision as neither this court nor the supreme court has ever addressed the issue of whether a not-for-profit hospital may employ physicians without violating the corporate practice doctrine. See *Glasco Electric Co. v. Department of Revenue*, 87 Ill. App. 3d 1070, 1071 (1980), *aff'd*, 86 Ill. 2d 346 (1981). The *Berlin* decision, however, is not binding upon this court because it is a decision by a court of coordinate jurisdiction. See *People v. Spahr*, 56 Ill. App. 3d 434, 438 (1978). Therefore, although we acknowledge the *Berlin* court's decision and its analysis, we are not obligated to follow that court's ruling or its reasoning.

The hospital's primary contention is that the corporate-practice-of-medicine doctrine does not apply to not-for-profit hospitals. To support this argument, the hospital claims that the Illinois Supreme Court, the Illinois Appellate Court, and the Illinois legislature have all recognized that hospitals employ physicians. In essence, the hospital argues that, by recognizing that hospitals employ physicians, the courts and legislature have carved out an exception to the corporate-practice-of-medicine doctrine as it applies to hospitals.

First, the hospital relies on the supreme court's decision in *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326 (1965), which held that a hospital could be directly liable for negligent medical treatment. Specifically, the hospital points this court to language in the *Darling* decision, where the court stated that hospitals " 'regularly employ on a salary basis a large staff of physicians,' " as proof that hospitals are not prohibited from employing physicians. See *Darling*, 33 Ill. 2d at 332, quoting *Bing v. Thunig*, 2 N.Y.2d 656, 666, 143 N.E.2d 3, 8 (1957).

Second, the hospital cites several appellate court cases where Illinois courts have included language that refers to a hospital's "employing" physicians. According to the hospital, these references to the word "employ" also prove that Illinois courts have recognized that hospitals may employ physicians, thereby essentially abandoning the corporate-practice-of-medicine doctrine as it applies to hospitals.

Third, the hospital repeatedly reminds this court that the legislature has never explicitly stated that hospitals may not employ physicians. On the contrary, the hospital argues, the Mental Health

Code of 1967 (Ill. Rev. Stat. 1977, ch. 91$^1$/$_2$, par. 1—1 *et seq.* (later replaced by the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—100 *et seq.* (West 1994))) referred to an individual's needing to obtain a certificate of a physician *not an employee* of the hospital where the individual sought hospitalization before the individual could be admitted for involuntary emergency hospitalization. Additionally, the hospital notes that section 5(c) of the Osteopathic and Allopathic Healthcare Discrimination Act (225 ILCS 62/5(c) (West 1994)) states that no licensed hospital shall discriminate with respect to employment against a licensed physician.

Finally, the hospital informs this court that the Illinois legislature has prohibited the employment of certain professionals by any type of corporation except under certain circumstances, but that the legislature has never enacted a similar prohibition on the employment of physicians. For example, the hospital notes that section 44 of the Illinois Dental Practice Act (225 ILCS 25/44 (West 1994)) prohibits the employment of dentists by any type of corporation. Additionally, the hospital states that the legislature has enacted similar prohibitions in the Corporation Practice of Law Prohibition Act (705 ILCS 220/1 *et seq.* (West 1994)) and the Clinical Psychologist Licensing Act (225 ILCS 15/1 *et seq.* (West 1994)). Therefore, the hospital argues, the Medical Practice Act of 1987's (225 ILCS 60/1 *et seq.* (West 1994)) not placing a similar prohibition on physicians indicates that the legislature intended for corporations such as hospitals to practice medicine.

Like the *Berlin* court, we decline to accept the hospital's analysis. First, although it is true that the legislature has never explicitly stated that hospitals may not employ physicians, the Medical Practice Act of 1923 (Ill. Rev. Stat. 1923, ch. 91, par. 1 *et seq.* (now codified, as amended, at 225 ILCS 60/1 (West 1994))) stated that no person shall practice medicine without a valid license (225 ILCS 60/3 (West 1992)). Starting with this premise, the legislature has then granted several exceptions where a corporation may perform professional services. The legislature has never, however, enacted an exception applicable to hospitals. For example, the Medical Corporation Act (805 ILCS 15/1 *et seq.* (West 1994)) allows one or more persons licensed to practice medicine to form a corporation under the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 1994)) for the purpose of providing medical services. Other examples of legislative exceptions are contained in the Professional Service Corporation Act (805 ILCS 10/1 *et seq.* (West 1994)), the Health Maintenance Organization Act (215 ILCS 125/1 *et seq.* (West 1994)), and the Limited Liability Company Act (805 ILCS 180/1—1 *et seq.* (West 1994)). As the *Berlin*

court discussed these exceptions in greater detail, we decline to expound on them further here. Overall, however, we disagree with the hospital that the legislature's actions since 1923 demonstrate that the corporate-practice-of-medicine doctrine does not apply to hospitals.

Second, the hospital's reliance on the supreme court's decision in *Darling* and the appellate courts' opinions relating instances where a physician was "employed" by a hospital to show that the corporate-practice-of-medicine doctrine does not apply to hospitals is unpersuasive. Neither the *Darling* decision nor the appellate courts' rulings in the cases the hospital cites concerned the corporate-practice-of-medicine doctrine. Indeed, *Darling* involved a medical malpractice issue and the appellate court cases concerned a variety of issues, including the evidentiary effect of witnesses who are physicians employed by hospitals and claims filed by physicians for employment benefits. We find that a court's use of the word "employ" when discussing such issues is not indicative of whether the corporate-practice-of-medicine doctrine applies to hospitals. Instead, this court must look to cases directly addressing the corporate-practice-of-medicine doctrine.

■ The Illinois Supreme Court first addressed the corporate-practice-of-medicine doctrine in *Dr. Allison, Dentist, Inc. v. Allison*, 360 Ill. 638 (1935). In *Allison*, the supreme court held that a corporation could not practice a profession because a corporation could not meet the qualifications for licensing, which included having personal characteristics such as honesty and loyalty. *Allison*, 360 Ill. at 641-42. Accordingly, the *Allison* court found that a "dental business" could not practice dentistry because the business was not able to obtain a medical license. *Allison*, 360 Ill. at 641-42.

One year later, the supreme court revisited the issue of a corporation's ability to practice medicine in *People v. United Medical Service, Inc.*, 362 Ill. 442 (1936). In *United Medical Service*, the supreme court held also that a corporation was prohibited from practicing medicine. We note that in *United Medical Service* the corporation was a clinic designed to provide low-cost medical service.

We find that the decisions in *Allison* and *United Medical Service* clearly state that a corporation cannot practice medicine. Since these decisions, the supreme court has not addressed the issue of the corporate practice of medicine, and the 1996 decision in *Berlin* is the only appellate court ruling on this matter. As we previously discussed, we agree with the fourth district's analysis that the legislature's actions indicate that corporations not specifically mentioned in a statute that qualify as an exception to the Medical

Practice Act of 1987 cannot practice medicine. Consequently, because there is no legislative enactment or exception that allows corporations that are hospitals to practice medicine and there has been no other supreme court case holding that the corporate-practice-of-medicine doctrine does not apply to hospitals, this court must adhere to the rule announced in *United Medical Service*. Therefore, we find that the corporate-practice-of-medicine doctrine does apply to hospitals and prohibits hospitals from practicing medicine.

Our analysis, however, does not conclude with the finding that hospitals may not practice medicine. Instead, the issue becomes what constitutes "practicing medicine" under the corporate-practice-of-medicine doctrine. The Illinois Supreme Court first formulated a definition for practicing medicine in *Allison*. The *Allison* court stated that merely "operating" a dental office by employing a dentist to perform services for the patients and customers constituted practicing medicine. *Allison*, 360 Ill. at 640-41. The supreme court substantiated this definition in *United Medical Service*, where it found that a corporation's contracting for the payment for medical services qualified as practicing medicine. *United Medical Service*, 362 Ill. at 455.

As is true with the issue of whether the corporate-practice-of-medicine doctrine applies to hospitals, Illinois courts have not discussed the definition of "practicing medicine" in this context since 1936. Accordingly, the definition enunciated in *United Medical Service* that a corporation's employing physicians constitutes practicing medicine remains the law in Illinois today.

A look at the law in other jurisdictions, however, shows that the definition of practicing medicine has changed since 1936, largely in response to the renewed interest in the corporate-practice-of-medicine doctrine.

Indeed, several courts now distinguish between a corporation's managing certain functions and the actual furnishing of medical services by professionals. In other words, in these states, the mere employment of physicians does not constitute practicing medicine. For example, in Connecticut the "business of providing health care personnel does not translate into the business of caring for patients." See *Daw's Critical Care Registry, Inc. v. Department of Labor, Employment Security Division*, 42 Conn. Super. 376, 403, 622 A.2d 622, 636 (1992), *aff'd*, 225 Conn. 99, 622 A.2d 518 (1993). Of particular significance in *Daw's* is that, in distinguishing between operating a health facility and practicing medicine, the court stated that the health facility did not have control over *how* services were provided to the patients. Instead, the health care facility merely managed a business. *Daw's*, 42 Conn. Super. at 403, 622 A.2d at 636.

Similarly, in New Jersey, nonprofessional business matters, such as paying office expenses and maintaining business records, do not constitute practicing medicine under the corporate-practice-of-medicine doctrine. See *Women's Medical Center v. Finley*, 192 N.J. Super. 44, 469 A.2d 65 (1983), *cert. denied*, 96 N.J. 279, 475 A.2d 578 (1984). In *Finley*, the court stated that all health care providers must perform business, administrative, and management chores but as long as these functions do not "impinge upon professional control by the physicians of the medical practice" the corporation is not practicing medicine. *Finley*, 192 N.J. Super. at 58, 469 A.2d at 73.

Overall, however, the situation described in the Kansas Supreme Court's 1994 decision of *St. Francis Regional Medical Center, Inc. v. Weiss*, 254 Kan. 728, 869 P.2d 606 (1994), is most factually similar to the instant case. In *Weiss*, the court reviewed the conception of the corporate-practice-of-medicine doctrine, as well as the policy reasons for its creation. The court explained that the main issue in allowing hospitals to employ physicians becomes whether the relationship between a doctor and the hospital patients becomes " 'so destroyed as to allow the hospital to become the medical practitioner.' " *Weiss*, 254 Kan. at 742, 869 P.2d at 615, quoting *Rush v. City of St. Petersburg*, 205 So. 2d 11, 14 (Fla. App. 1967) (where the Florida appellate court found that the corporate-practice-of-medicine doctrine did not apply to hospitals). Then, the *Weiss* court stated that a contract was purely of a fiscal nature and to conclude that a hospital must accomplish what it is licensed to do "without employing physicians is not only illogical but ignores reality." *Weiss*, 254 Kan. at 745, 869 P.2d at 618.

Finally, we note that some states never interpreted the corporate-practice-of-medicine doctrine as prohibiting hospitals from employing physicians. See *Group Health Ass'n v. Moor*, 24 F. Supp. 445 (D.C. 1938), *aff'd sub nom. Jordan v. Group Health Ass'n*, 107 F.2d 239 (D.C. Cir. 1939) (United States District Court for the District of Columbia concluded that a health association's employing physicians did not violate the corporate-practice rule); *State ex rel. Sager v. Lewin*, 128 Mo. App. 149, 106 S.W. 581 (1907) (Missouri Court of Appeals found that the doctrine does not inhibit a private hospital's ability to incorporate to furnish medical services and provide treatment through licensed physicians because in so doing a hospital is not practicing medicine); *State Electro-Medical Institute v. State*, 74 Neb. 40, 103 N.W. 1078 (1905); *State Electro-Medical Institute v. Platner*, 74 Neb. 23, 103 N.W. 1079 (1905) (Nebraska Supreme Court explained that a corporation's making a contract with a physician is not practicing medicine).

State legislatures also have limited the scope of the corporate-

practice-of-medicine doctrine. For example, the South Dakota legislature recently passed a statute that provides, in pertinent part:

"A corporation is not engaged in the practice of medicine *** and is not in violation of [this section] by entering into an employment agreement with a physician licensed pursuant to this chapter if the agreement or the relationship it creates does not:

*** [i]n any manner, directly or indirectly, supplant, diminish or regulate the physician's independent judgment concerning the practice of medicine or the diagnosis and treatment of any patient." S.D. Codified Laws Ann. § 36—4—8.1 (Michie Supp. 1995).

Further, some state legislatures distinguish between not-for-profit and profit corporations and do not apply the doctrine to nonprofit organizations. For example, in North Dakota the legislature enacted a statute stating that a "nonprofit health service corporation *** does not violate limitations on the corporate practice of medicine." N.D. Cent. Code § 26.1—49—02 (1995). The State of California has also held that nonprofit organizations are significantly different from profit organizations because public authorities do not harass nonprofit entities. See *People ex rel. State Board of Medical Examiners v. Pacific Health Corp.*, 12 Cal. 2d 156, 158-59, 82 P.2d 429, 430-31 (1938), *cert. denied*, 306 U.S. 633, 83 L. Ed. 1035, 59 S. Ct. 463 (1939). Finally, we note that the public policy considerations that have provided the best rationale for a prohibition against the corporate practice of medicine in the past do not pose as significant a threat in the present-day health care system. By far, the most considered policy reasons for prohibiting the corporate practice of medicine are that a corporation will exert control over professional judgment, commercially exploit the medical practice, and divide the physician's loyalty between the patient and the employer.

State legislatures, however, have already considered these concerns in implementing legislation allowing organizations to provide health care plans. See, *e.g.*, 215 ILCS 125/1—2(9) (West 1994).

Indeed, the health maintenance organization (HMO) structure embodies many of the characteristics the corporate-practice-of-medicine doctrine was contrived to eradicate. For example, HMO management encourages physicians to not order expensive tests for patients that management deems to be of marginal diagnostic value. Indeed, the idea of an HMO is to contain medical costs while providing basic medical care to as many people as possible. Further, HMOs may solicit patients, thereby undermining the commercialism justification of the corporate-practice rule. Finally, inherent in the HMO design is the risk that a physician's loyalty will be divided be-

tween the employer and patient, which is the same risk that the corporate-practice-of-medicine doctrine seeks to protect against. Therefore, because the policy reasons that initiated the implementation of the corporate-practice-of-medicine doctrine have already been managed through the implementation of HMO organizations, these public policy concerns, as Dr. Holden and the *amicus* argue, appear to be not reason enough to continue to prohibit hospitals from employing physicians.

In conclusion, the corporate-practice-of-medicine doctrine arose in response to fears that corporate involvement in medicine would restrict physicians' independence, commercialize medical practice, and threaten physician/patient loyalty. However, the health care industry has changed considerably since this doctrine was established. As the Illinois Supreme Court noted in 1965:

> " 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [*sic*], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action.' " *Darling*, 33 Ill. 2d at 332, quoting *Bing*, 2 N.Y.2d at 666, 143 N.E.2d at 8.

Accordingly, prohibiting corporations, primarily hospitals, from employing physicians in the present day may do more harm than good. Indeed, although the Illinois Supreme Court has not clarified the definition of "practicing medicine" it enunciated in *United Medical Service*, other states have narrowed and/or elaborated on what constitutes practicing medicine in the context of the corporate-practice-of-medicine doctrine, finding that, in the very least, not-for-profit hospitals are an exception to this rule.

Nevertheless, it is not this court's place to implement new law or institute new policy regarding the corporate-practice-of-medicine doctrine. Instead, the Illinois Supreme Court has spoken on this issue, albeit over 60 years ago, and we cannot ignore that court's rulings or that court's definition of "practicing medicine." Accordingly, because the supreme court has found that a hospital's employing physicians constitutes practicing medicine and the agreement in the instant case involves the hospital's employing Dr. Holden, Dr. Holden's contract violates the corporate-practice-of-medicine doctrine. Therefore, the contract is void and unenforceable. As a result, we

decline to address whether the covenant not to compete is separately enforceable. See *Abel v. Fox*, 274 Ill. App. 3d 811, 817 (1995) (to be enforceable, a covenant not to compete must be ancillary to a valid employment contract or a valid relationship).

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER, P.J., and THOMAS, J., concur.