2016 IL App (4th) 150685

NO. 4-15-0685

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>　　　　Plaintiff-Appellant,<br>　　　　　　　v.<br>$35,315.00 UNITED STATES CURRENCY,<br>　　　　Defendant.<br><br>(Tykisha Lofton, Claimant-Appellee). | ) ) ) ) ) ) ) ) ) | Appeal from<br>Circuit Court of<br>Macon County<br>No. 14MR1046<br><br><br>Honorable<br>Thomas E. Griffith, Jr.,<br>Judge Presiding. |

_____

　　　　JUSTICE POPE delivered the judgment of the court, with opinion.
　　　　Presiding Justice Knecht and Justice Turner concurred in the judgment and opinion.

**OPINION**

¶ 1　　　　The State appeals the trial court's judgment the proceeds of a winning lottery ticket were not forfeitable under the Illinois Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 to 14 (West 2014)). We reverse.

¶ 2　　　　　　　　　　　　　I. BACKGROUND

¶ 3　　　　On November 18, 2014, Macon County police officers executed a search warrant at the residence of Terrance Norwood. Claimant, Tykisha Lofton, lived with Norwood. Police recovered cannabis, cocaine, a digital scale, packaging material, a loaded SKS assault rifle, ammunition, and approximately $200 cash.

¶ 4        During an interview with police, Norwood admitted he sold drugs. Norwood stated he was unemployed and had no source of income other than drug sales. Norwood explained he was going to stop selling drugs because he had recently purchased a scratch-off lottery ticket at the Price Rite in Decatur and won $50,000.

¶ 5        On November 21, 2014, the State charged Norwood with (1) armed violence for being armed with a dangerous weapon while possessing cocaine with the intent to deliver (720 ILCS 5/33A-2(a), A-3(a) (West 2014)) (count I), (2) armed violence for being armed with a dangerous weapon while possessing cannabis with the intent to deliver (720 ILCS 5/33A-2(a), A-3(a) (West 2014)) (count II), (3) unlawful possession of a controlled substance (cocaine) while within 1000 feet of church property with the intent to deliver and with a prior conviction for unlawful possession of controlled substance with the intent to deliver (720 ILCS 570/407(b)(1) (West 2014)) (count III), and (4) unlawful possession of cannabis with a conviction for prior unlawful possession of a controlled substance with the intent to deliver (720 ILCS 550/4(d) (West 2014)) (count IV).

¶ 6        On January 14, 2015, the State filed a complaint for forfeiture, seeking the proceeds of the winning lottery ticket, *i.e.*, $35,315. (The parties appear to agree that figure represents the lump sum value of the $50,000 prize.) The State alleged those funds were subject to forfeiture as proceeds traceable to Norwood's illegal drug sales.

¶ 7        During the bench trial on the State's complaint, Macon County sheriff's deputy Brian Hickey testified he and other officers executed a search warrant at Norwood's residence on November 18, 2014. Both Norwood and Lofton were present at the time of the search. In the bedroom, police observed an SKS assault rifle in plain sight and two boxes of ammunition. In the

kitchen, police found 7.5 grams of cocaine, a digital scale, and drug packaging material. In addition, cannabis was located throughout the house. Police also recovered small rocks of crack cocaine from a vehicle parked at the residence, which was titled in both Norwood's and Lofton's names.

¶ 8 During an interview with Hickey, Norwood stated he had been unemployed for several months and admitted he was selling cocaine and cannabis. Norwood stated he was selling drugs to pay the bills until he got "that little bit of money." When Hickey asked Norwood what he meant by "that little bit of money," Norwood explained he had won $50,000 on a $3 scratch-off lottery ticket. The ticket had been turned in to the lottery office in Springfield, and Norwood was waiting to get paid. Hickey testified Norwood told him he purchased the ticket in the beginning of November and he let Lofton scratch it off.

¶ 9 Hickey testified he also interviewed Lofton. According to Hickey, Lofton never gave any indication she was the one who paid for the ticket. She told him Norwood purchased the ticket and she scratched it off. Lofton maintained she knew Norwood smoked cannabis but she was unaware he was selling drugs. While the SKS rifle was located in plain sight, Lofton stated she never noticed it. Hickey testified one of the cell phones seized belonged to Lofton. On that phone, police found text messages referring to "loud." Hickey explained "loud" is a street term for high-grade cannabis. On Norwood's cell phone, there were images of Lofton and Norwood with marijuana plants. Hickey testified Norwood advised he had told Lofton he was selling drugs but he was going to stop once they got the lottery money.

¶ 10 After the trial court denied Lofton's motion for a directed finding, she presented her case. Lofton testified she and Norwood had been living together "for years." Lofton lived at

the residence with her three children (ages five, six, and eight). Lofton maintained Norwood did not give her the money to purchase the ticket. Lofton testified she was unemployed both at the time of the hearing and at the time the lottery ticket was purchased. Although she last babysat in September, Lofton claimed to have received payment for those services in October 2014. Lofton explained she purchased the first ticket, which yielded a free ticket, with money she received from babysitting. According to Lofton, the free ticket was the winning ticket. Lofton testified she immediately went to the Springfield lottery office and filled out a claim form. A copy of that form was introduced into evidence. It showed her name, social security number, phone number, driver's license number, and signature, and it was dated October 30, 2014. Lofton testified she did not have an agreement to split the winnings with Norwood. Lofton did not recall speaking to police about the ticket. She also testified she was unaware Norwood was dealing drugs. According to Lofton, she did not know there was a weapon, a digital scale, or cocaine in the residence.

¶ 11 At the conclusion of the hearing, the trial court found in favor of Lofton. With regard to who purchased the ticket, the trial court found the following:

"This Court believes that Mr. Norwood purchased the lottery ticket. This Court believes that he purchased the ticket more likely than not with drug money.

[Norwood] indicated at that time that drug money was his only source of income. He used the [drug] money to pay his bills and to help support his family. And by the way, he was going to change because he had won this ticket and so on and so forth. Before Mr.

Norwood and [Lofton] understood the consequences this is what Mr. Norwood told the authorities and what [Lofton] told the authorities. This Court does find that Detective Hickey's testimony on this point is credible and [Lofton's] testimony on the point is not credible."

¶ 12　　　However, the trial court denied the State's complaint on the basis that although the ticket was purchased with drug money, it was not forfeitable under the Forfeiture Act. Specifically, the court found the following:

"This Court does not believe that forfeiting the proceeds that were purchased from a lottery ticket was what the *** Forfeiture Act was intended to do. The proceeds in this particular case were the windfall of purchasing one $3 lottery ticket. They were not derivative from the sales of drugs except, perhaps, for the $3. They did not stem from the sale of drugs.

*** I did carefully review the [*Betancourt*] case, which, of course, says just the opposite in terms of what I am stating. I do not agree with the reasoning in that particular case. I am not bound by the decision of a federal third decision out of the state of Texas. And just to comment briefly, I think, at some point in time the—the argument that everything stems from something has to stop.

What if, for instance, they had taken the proceeds and invested [them] in some type of successful dry cleaning business or some such thing, and they're making *** $100,000 a year from the

dry cleaning business, are those proceeds then forfeitable?

What if, for instance, *** some cannabis dealer had earned $10,000 selling cannabis, and he decided he was going to put himself through medical school or something with that money, earned a medical degree and was out successfully working? Is that money then forfeitable? At some point the—the connection has to stop."

The trial court concluded forfeiture was not appropriate under the circumstances presented by this case.

¶ 13 On July 29, 2015, the State filed a motion to stay judgment pending appeal, which the trial court granted. According to the court's order, "The monies shall be held in abeyance by the Illinois State Lottery Commission."

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, the State argues the trial court erred in its interpretation of the Forfeiture Act when it found the winnings from the lottery ticket were not forfeitable. The State contends the proceeds of the winning ticket should be forfeitable because they are traceable to Norwood's drug dealing. We agree.

¶ 17 Ordinarily, a trial court's decision in a forfeiture case will not be reversed unless it is against the manifest weight of the evidence. *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 508, 841 N.E.2d 928, 944 (2005). However, as this case involves the interpretation of a statute, which is a question of law, our review is *de novo*. *1945 North 31st Street*, 217 Ill. 2d at 499, 841 N.E.2d at

939.

¶ 18     As explained by our supreme court:

> " 'The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. [Citation.] The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. [Citations.] The statute should be evaluated as a whole, with each provision construed in connection with every other section. [Citation.] If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids.' " *1945 North 31st Street*, 217 Ill. 2d at 499, 841 N.E.2d at 938-39 (quoting *Paris v. Feder*, 179 Ill. 2d 173, 177, 688 N.E.2d 137, 139 (1997)).

¶ 19     The purpose of the Forfeiture Act is to deter individuals from drug trafficking by imposing a civil penalty in addition to the criminal penalties already provided. *People v. One Residence Located at 1403 East Parham Street*, 251 Ill. App. 3d 198, 202, 621 N.E.2d 1026, 1030 (5th Dist. 1993). The Forfeiture Act is based on the federal narcotics civil forfeiture statute and is to be interpreted "in light of the federal forfeiture provisions contained in 21 U.S.C. 881 as interpreted by the federal courts" except to the extent they expressly conflict. 725 ILCS 150/2 (West 2014). In addition, the provisions of the Forfeiture Act are to be "liberally construed so as to effect their remedial purpose." 725 ILCS 150/13 (West 2014).

¶ 20     The Illinois General Assembly passed the Forfeiture Act to establish uniform

procedures for the civil forfeiture of property "attributable to" certain drug-related violations of, *inter alia*, the Illinois Controlled Substances Act (720 ILCS 570/100 to 603 (West 2014)) and the Cannabis Control Act (720 ILCS 550/1 to 19) (West 2014)). *People v. $280,020 United States Currency*, 372 Ill. App. 3d 785, 791, 866 N.E.2d 1232, 1239 (1st Dist. 2007); 725 ILCS 150/3 (West 2014). Both of those acts provide, in relevant part, *all proceeds traceable* to an exchange for a substance in violation of the acts are subject to forfeiture. 720 ILCS 570/505(a)(5) (West 2014); 720 ILCS 550/12(a)(5) (West 2014).

¶ 21       In *United States v. Betancourt*, 422 F.3d 240, 242 (5th Cir. 2005), a case with very similar facts to the instant matter, the defendant appealed the district court's order for forfeiture of a $5 million lottery prize because the winning ticket was purchased with the proceeds of his drug trafficking. In affirming the district court's decision, the Fifth Circuit Court of Appeals found the proceeds of drug selling used to win the Texas lottery made the lottery winnings subject to forfeiture. *Betancourt*, 422 F.3d at 252. The court reasoned "[a]ll proceeds obtained from unlawful conduct and property traceable to those proceeds are subject to criminal forfeiture." *Betancourt*, 422 F.3d at 250; see also *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 905 (11th Cir. 1985) (rejecting the argument forfeited money did not constitute the proceeds of narcotics transactions where the money had been exchanged for goods because the forfeiture statute does not limit forfeiture to property found in the hands of a drug dealer but applies to all proceeds traceable to drug dealing). According to *Betancourt*, the fact "[the defendant] used his drug proceeds to generate a very large return by winning the Texas lottery is of no import in the forfeiture analysis." *Betancourt*, 422 F.3d at 251.

¶ 22     In this case, the plain language of the relevant statutes clearly provides "all proceeds traceable" to the sale of drugs are forfeitable. 720 ILCS 570/505(a)(5) (West 2014); 720 ILCS 550/12(a)(5) (West 2014). The trial court found Norwood purchased a scratch-off lottery ticket with proceeds derived from his drug dealing. While Lofton testified she made the purchase and did not know Norwood sold drugs, the court found her testimony was not credible. According to Lofton, the initial ticket yielded a free ticket, which ended up being the winning ticket. Because of the direct link between the lottery winnings and the funds used to purchase the original ticket, the winnings can reasonably be considered "proceeds traceable" to Norwood's illegal drug sales. As such, those proceeds are forfeitable under the Forfeiture Act. The trial court's conclusion to the contrary was error.

¶ 23     In support of her argument the lottery winnings are not subject to forfeiture, Lofton cites this court's opinion in *Walker v. Rogers*, 272 Ill. App. 3d 86, 92-93, 650 N.E.2d 272, 276 (4th Dist. 1995), for the proposition a voluntary assignment of future payments of lottery prizes is prohibited by section 13 of the Illinois Lottery Law (20 ILCS 1605/13 (West 1992)). Lofton maintains, as a result, she "could not in any way, even if ordered to do so, assign her rights to a future payout of the winning lottery ticket" to the State.

¶ 24     We acknowledge *Rogers* finds the first clause of section 13 of the Lottery Law "absolutely prohibits a lottery winner from assigning his prize winnings." *Rogers*, 272 Ill. App. 3d at 92-93, 650 N.E.2d at 276; see, *e.g.*, *Midland States Life Insurance Co. v. Hamideh*, 311 Ill. App. 3d 127, 130-32, 724 N.E.2d 32, 35-36 (1st Dist. 1999) (security interest in lottery winnings was invalid where lottery winner could not pledge as collateral for a loan her right to receive future installment payments of her winnings). The general prohibition against the assignment of

lottery winnings "evidences the state's desire to exercise its *parens patriae* protection over lottery winners." *Hamideh*, 311 Ill. App. 3d at 134, 724 N.E.2d at 37.

¶ 25 However, as noted in *Rogers*, the second clause of section 13 states " 'any person pursuant to an appropriate judicial order may be *paid* the prize to which a winner is entitled.' " (Emphasis in original.) *Rogers*, 272 Ill. App. 3d at 93, 650 N.E.2d at 276 (quoting 20 ILCS 1605/13 (West 1992)). It does not state a lottery winner can *assign* her prize winnings pursuant to a judicial order. *Rogers*, 272 Ill. App. 3d at 93, 650 N.E.2d at 276. Indeed, "[t]here is a difference between an order enforcing a judgment and an order declaring an assignment." *Rogers*, 272 Ill. App. 3d at 93, 650 N.E.2d at 276. We interpreted the second clause of section 13 "as applying to judicial orders entered in separate proceedings where disposition of a lottery prize is an appropriate remedy, such as an order directing payment of prize winnings to a former spouse as part of an equitable distribution or spousal support in a marital dissolution case, for a child support arrearage, or a garnishment order allowing a debtor to satisfy a judgment from a debtor-lottery winner." *Rogers*, 272 Ill. App. 3d at 93, 650 N.E.2d at 276. Here, a judicial forfeiture order would be appropriate for section 13 purposes. Lofton would not be making an assignment of the lottery proceeds. Rather, the State is seizing the proceeds by a judicial forfeiture order. As such, Lofton's argument in this regard fails.

¶ 26                                    III. CONCLUSION

¶ 27 For the reasons stated, we reverse the trial court's judgment.

¶ 28 Reversed.